# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

RODERICK NUNLEY,                )
                                        )

Petitioner,                     )
                                        )

vs.                              )     Case No. 99-8001-CV-W-FJG
                                        )

MICHAEL BOWERSOX,,           )
                                        )

Defendant.                    )

## ORDER

      Currently pending before the Court is Petitioner's Supplemental Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. # 49).

## I. BACKGROUND

      Nunley initially pled guilty to the kidnaping, rape and murder of Ann Harrison. He initially waived his right to be sentenced by a jury and was sentenced to death by Judge Randall on May 3, 1991. On August 12, 1991, Nunley filed a pro se motion to vacate the Court's judgment. Judge Randall recused himself when he learned that Nunley intended to file an amended Rule 24.035 motion alleging that he had been drinking at a downtown bar on the day that he sentenced Nunley to death. After the amended motion was filed, the presiding Judge of the Jackson County Circuit Court signed an order recusing all judges of the Sixteenth Judicial Circuit. The Missouri Supreme Court then appointed Judge Robert J. Dierker, Jr. of the 22nd Judicial Circuit to hear Nunley's postconviction motion. Judge Dierker conducted a hearing and found that Judge Randall had consumed an alcoholic beverage over the lunch hour prior to the formal sentencing hearings. However, the court nevertheless denied Nunley's request for

relief.  Nunley then appealed both his original conviction and the denial of his post-conviction motion to the Missouri Supreme Court.  On June 23, 1993, the Missouri Supreme Court issued a one sentence order which read: "Judgment vacated.  Cause remanded for new penalty hearing, imposition of sentence, and entry of new judgment." After the case was remanded, new counsel was appointed who filed a Motion to Withdraw Nunley's guilty plea.  The case was assigned to Judge O'Malley who held an evidentiary hearing on January 26, 1994 on the motion.  O'Malley denied Nunley's motion to withdraw from the bench.  Nunley filed a motion to reconsider and alternatively asked the court to allow a jury to sentence him pursuant to Mo.Rev.Stat. § 565.035.5(3).  On March 30, 1994, Nunley filed a Notice of Petition for Writ of Prohibition and/or Mandamus seeking to prohibit O'Malley from proceeding with the scheduled sentencing hearing.  The next day Jackson County Presiding Judge Lee B. Wells held a meeting with Nunley's counsel and Judge O'Malley to discuss whether Judge O'Malley had jurisdiction to hear the case due to Judge Mason's October 28, 1991, Order recusing all judges of the Sixteenth Judicial Circuit and the subsequent order appointing Judge Dierker.  Judge Wells and Judge O'Malley telephoned Justice Robertson who stated that although he could not speak for the entire court believed that the prior order disqualified the entire Jackson County Circuit bench and that the Court should reassign the case to Judge Dierker.  Nunley's counsel opposed this suggestion arguing that Judge Dierker had already made a finding as to the propriety of the death penalty.  The next day, Nunley's counsel received a letter from Judge Webber stating that he had been assigned to hear Nunley's case.  When Nunley and his counsel appeared at the hearing scheduled by Judge Webber, Judge O'Malley walked in and

2

took the bench and stated that he did not believe that he should step down from the case and that he would ask the Missouri Supreme Court to vacate its order appointing Judge Webber.  Nunley then formally asked Judge O'Malley to recuse himself, which was denied.  One week later Judge O'Malley began the sentencing hearing.  During the hearing Nunley had the opportunity to call expert witnesses and also to put on evidence regarding racial discrimination on the part of the Prosecutor's office.  On May 10, 1994, Judge O'Malley rejected all of Nunley's arguments and sentenced him to death.   On July 13, 1994, Nunley filed his second pro se Rule 23.035 motion which was assigned to Jackson County Circuit Court Judge Justine Del Muro.  However, she recused herself and transferred the case to the presiding judge for reassignment.  That same day, Judge Wells transferred the case to Judge O'Malley.  The Public Defender's office was assigned to represent Nunley.  On February 14, 1995 Judge O'Malley held an evidentiary hearing and accepted all of the evidence that Nunley had previously introduced.  On March 14, 1995, Judge O'Malley denied Nunley's motion.  Of the thirty-one points raised by Nunley, Judge O'Malley denied twelve of those points on the merits and denied the remaining nineteen points based on collateral estoppel.  The Missouri Supreme Court reversed in part and remanded in part, directing the postconviction court to make findings on those claims it found barred by collateral estoppel.  On remand the postconviction court issued further findings of fact and conclusions of law denying all claims.  A third appeal was filed and the Missouri Supreme Court affirmed Nunley's conviction and sentence.

    Petitioner originally filed a petition for a writ of habeas corpus challenging his state conviction for first-degree murder, and his death sentence on April 28, 2000.  On

June 5, 2003, this Court issued an order denying habeas relief. On December 4, 2003,

this Court issued a Certificate of Appealability on the issue of whether, under Ring v.

Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), petitioner was entitled

to have a jury determine the facts necessary for the imposition of his death sentence.

On June 17, 2003, the Missouri Supreme Court issued a decision finding Ring to be

retroactive to cases on collateral review, State v. Whitfield, 107 S.W.3d 253, 265-69

(Mo. banc 2003).  In his appeal to the Eighth Circuit, Nunley argued that where a state

had created certain rights for defendants, under the Due Process Clause, federal courts

should enforce those rights. The Eighth Circuit did not dispute that

> Missouri may 'provide greater protections in [its] criminal justice system
> than the Federal Constitution requires.' California v. Ramos, 463 U.S.992,
> 1014, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983). But Nunley has chosen
> the wrong forum in which to seek those 'greater protections.'  The issue he
> raises should, in this case, be addressed in the first instance - if at all- by a
> state court.  See 28 U.S.C. § 2254(b).  Under federal law, which we are
> bound to follow, Ring is not retroactive on collateral review.

Nunley v. Bowersox, 394 F.3d 1079,1080-81 (8th Cir.2005). Petitioner then filed a

petition for certiorari with the United States Supreme Court.  The petition was denied on

October 13, 2005.

On September 30, 2010, petitioner filed a motion to recall the mandate in the

Missouri Supreme Court, arguing that he was entitled to have his death sentence set

aside because under Missouri law, Ring is retroactive to cases on collateral review and

in his case a judge found the facts which rendered him eligible for the death penalty.

The Missouri Supreme Court overruled the Motion to Recall the Mandate in a one

sentence order dated October 12, 2010, stating "[a]ppellant's motion to recall the

mandate having been considered on the merits, [said] motion is overruled.  Appellant's

4

motion to stay execution overruled as moot. " On October 12, 2010, Petitioner filed a

Supplemental Petition for Habeas Corpus relief and a Motion for a Stay of Execution.

On October 18, 2010, this Court granted petitioner's application for a stay of execution,

stating, "[w]ithout further analysis of this issue or an explanation as to why the Missouri

Supreme Court denied petitioner's Motion to Recall the Mandate, this Court is unable to

say whether the Missouri Supreme Court's October 12, 2010, decision is '*an*

*unreasonable determination of the facts in light of the evidence presented in the State*

*court proceeding.*'" (Doc. # 54, p. 8). The Court found that Petitioner was entitled to a

stay of execution pending disposition of this issue by the Missouri Supreme Court. The

Missouri Supreme Court after briefing and oral argument issued an Order on May 31,

2011, overruling Petitioner's Motion to Recall the Mandate. On July 19, 2011, a motion

for rehearing was denied.

After the Missouri Supreme Court issued its Opinion, the parties filed

supplemental briefs in this Court. The Court also heard oral argument from the parties

on July 26, 2012.

## II. STANDARD

Section 2254 has been amended by the Antiterrorism and Effective Death
Penalty Act of 1996 ("AEDPA"). Pub.L.No. 104-132 (April 24, 1996).
Under AEDPA, a federal court must defer to a state court's resolution of a
petitioner's fact-dependent claims unless it is shown that the state court's
decision "was contrary to, or involved an unreasonable application of,
clearly established federal law" or "was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceeding." § 2254(d)(1),(2). A state court decision is "contrary to
clearly established federal law" if it significantly misstates an applicable
rule from a Supreme Court case or reaches a conclusion different than the
Supreme Court in a case involving materially identical facts. Williams v.
Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389
(2000)(O'Connor, J. concurring). A state court decision is an

5

"unreasonable application of clearly established federal law" if the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 1520. The reasonableness of a decision is to be judged by an objective standard, rather than by reference to a hypothetical reasonable jurist. Id. at 1521 (overruling Drinkard v. Johnson, 97 F.3d 751, 769 (1996), cert. denied, 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997)).

Arnold v. Dormire, No. 10-04107-CV-C-NKL, 2010 WL 4008126, *3 (W.D.Mo. Oct. 12, 2010).

## III. DISCUSSION

### A. Missouri Supreme Court Decision

Nunley argued that his death sentence should be set aside because of the intervening decisions in Ring v. Arizona, 536 U.S. 584, 122 S.Ct.2428, 153 L.Ed.2d 556 (2002) and State v. Whitfield, 107 S.W.3d 253 (Mo.banc 2003). Those decisions held that a defendant has a right to have a jury determine the facts necessary to impose the death penalty. Nunley argues that he was deprived of this right in violation of the Sixth and Fourteenth Amendments and also under the Missouri Constitution.

The Missouri Supreme Court found:

Nunley waived jury sentencing when he pled guilty at his original plea hearing in 1991. Nunley, 923 S.W.2d at 923. At his plea hearing, the trial judge explained to Nunley that by pleading guilty he was waiving several constitutional rights, including jury sentencing. Nunley testified that he understood his waiver:

Q. Do you understand that by pleading guilty today you're waiving or giving up a certain number of constitutional rights that you would have if you went to trial?

A. Yes.

Q. Do you understand that at trial you would have the right to a trial by a judge or a jury?
A. Yes.

6

. . .

Q.  Do you understand that if you went to trial and you were found guilty of these charges that you would then start the second phase of the trial, which would be the sentencing phase by the jury; do you understand that?

A.  Yes.

Q.  By waiving that, you're not going to be sentenced by a jury.  Do you understand that?

A.  Yes.

. . .

Q.  It is still your desire to plead guilty today?

A.  Yes, it is.

State v. Nunley, 341 S.W.3d 611, 619-20 (Mo. banc 2011).

The Missouri Supreme Court found that Ring does not apply to defendants like Nunley who plead guilty and waive their right to jury sentencing.  The Court also found that Nunley's waiver remained valid, even after the case was remanded for re-sentencing and that Mo.Rev.Stat. § 565.006.2 is constitutional.

The Missouri Supreme Court also found that Nunley's due process rights were not violated in proportionality review because State v. Deck, 303 S.W.3d 527 (Mo. banc) cert. denied, 130 S.Ct. 3505 (2010), is not applied retroactively. The Court noted that "[t]he United States Supreme Court has held that a state supreme court is not constitutionally compelled to make retroactive its new construction of a state statute. Wainwright v. Stone, 414 U.S. 21, 23-24, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973).  'A state in defining the limits or adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward.' Id." Nunley, 341

7

S.W.3d at 624.

Additionally, the Missouri Supreme Court also discussed two issues which the dissent and this Court raised, but which Nunley had not raised. The first issue is whether the sentencing court violated Blakely v. Washington, 542 U.S. 296, 124 S.Ct.2531,159 L.Ed.2d 403 (2004). The second issue was whether Nunley waived both his statutory and constitutional right to jury sentencing when he pled guilty and whether the waiver remained valid even though it occurred before the Ring decision.

In Blakely, the United States Supreme Court extended Ring and stated that the Sixth Amendment right to jury sentencing applies even when a defendant pleads guilty. The defendant in Blakely pled guilty to kidnapping. The facts supported a maximum sentence of 53 months. The judge however imposed a 90 month sentence, finding that the defendant had acted with "deliberate cruelty." The Supreme Court found that the sentence violated the defendant's Sixth Amendment rights because the finding was neither admitted nor found by the jury. The Court stated, "nothing prevents a defendant from waiving his Apprendi rights. When a defendant pleds guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." 542 U.S. at 310, 124 S.Ct. 2541. The Missouri Supreme Court found that Blakely is distinguishable from this case because the defendant in Blakely was surprised when his sentence was judicially enhanced, whereas Nunley knew and affirmatively chose to be sentenced by a judge. Nunley, 341 S.W.3d at 625. The Missouri Supreme Court found that Blakely "does not extend Sixth Amendment protections to defendants who strategically plead guilty and purposefully waive jury sentencing." Id. at 627.

8

With regard to the second issue - whether the waiver remained valid - the Missouri Supreme Court found that it remained valid, even after remand. The Missouri Supreme Court found that the record from the plea hearing supports the fact that Nunley knew he had a right to be sentenced by a jury, but that he preferred to be sentenced by a judge. The Court also found that this right was explained to Nunley in constitutional terms. The Missouri Supreme Court stated: "[t]he key fact is Nunley's knowledge of the ability to be sentenced by a jury. Neither Apprendi, Ring, nor Blakely created a right to be sentenced by a jury that Nunley did not already have or understand, it just provided the United States Constitution as an additional source of this right. The fact that Ring provided an additional source of this right after Nunley pled guilty does not make Nunley's waiver 'unknowing.'" Id. at 628.

### B. Nunley's Supplemental Habeas Corpus Petition

On September 30, 2010, petitioner filed a motion to recall the mandate in the Missouri Supreme Court ruling, arguing that he was entitled to have his death sentence set aside because under Missouri law, Ring is retroactive to cases on collateral review and in his case a judge found the facts which rendered him eligible for the death penalty. The Missouri Supreme Court overruled the Motion to Recall the Mandate in a one sentence order on October 12, 2010, stating, "[a]ppellant's motion to recall the mandate having been considered on the merits, said motion is overruled. Appellant's motion to stay execution overruled as moot." Petitioner argues that this is not a second or successive habeas claim because his claim just became ripe for review and he could not have raised it before. He states that he is raising a claim based on Hicks v. Oklahoma, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980) alleging that he has a

9

state created liberty interest under <u>Whitfield</u> to have a jury determine the facts necessary for the imposition of the death penalty. Nunley argues that given the state of the law in Missouri - that <u>Ring</u> requires juries to determine the facts necessary to impose the death penalty and that this ruling is retroactive, the Missouri Supreme Court's denial of the Motion to Recall the Mandate is legally incorrect.

The State argues in opposition, that if Nunley is asserting that he is entitled to relief based on <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) or on the theory that <u>Ring</u> retroactively invalidated his waiver of jury sentencing, his claim is procedurally barred, because he did not brief these theories to the Missouri Supreme Court. The State also argues that the Missouri Supreme Court's analysis under <u>Ring</u>, <u>Blakely</u> and <u>Halbert</u> is objectively reasonable and must be left undisturbed as it is objectively reasonable to conclude that those cases do not invalidate a waiver of jury sentencing.

Nunley argues in reply that when his original sentence was overturned and the case was remanded for a "new penalty hearing, imposition of sentence, and entry of new judgment" that this new hearing included all the rights attendant to such a hearing. He argues that at that point, he was in a similar position to someone who had initially pled guilty and had his guilty plea set aside. Nunley also argues that <u>Whitfield</u> gives him the right to a retroactive application of <u>Ring</u> - the right to have a jury determine the facts necessary to impose a sentence of death, at the new penalty hearing.

Nunley also argues that he did not waive the argument that he retained the right to a jury trial on the sentencing factors despite his guilty plea. Nunley acknowledges that although he did not specifically mention <u>Blakely</u> in his brief, this argument is not

10

waived, because he argued in his opening brief that Ring and Apprendi, as applied

through Whitfield gave him the retroactive right to have a jury determine the facts

necessary to impose a sentence of death at his "new penalty hearing."  Nunley argues

that he has consistently maintained that under Apprendi and Ring, he had a right to

have a jury determine the facts necessary to impose the death penalty at the new

penalty hearing, even though he had previously pled guilty.  Nunley argues that even

though he did not cite to Blakely, he cited to other Supreme Court precedents that stood

for the same proposition.

Nunley also argues that in determining whether he waived his right to have a jury

determine the facts necessary to impose the death penalty, must be examined by

looking at the proceedings which occurred before Judge O'Malley.  After his death

sentence was overturned by the Missouri Supreme Court, Nunley specifically requested

Judge O'Malley to convene a jury to determine his punishment.  Nunley argues that the

suggestion or conclusion that he waived his retroactive right to have a jury determine

the sentencing factors before Judge O'Malley is based on an unreasonable

determination of facts.

Nunley also argues that the Missouri Supreme Court's decision involves an

unreasonable application of Hicks v. Oklahoma.  Nunley argues that under Whitfield, he

had a "state-created liberty right not to be sentenced to death unless the jury makes the

requisite factual findings. This right is protected against arbitrary deprivation by the Due

Process Clause of the Fourteenth Amendment."  (Supplemental Reply, Doc. 62, p. 8).

Nunley states that the Missouri Supreme Court has retroactively applied Ring in nine

capital cases, because the defendants' death sentences were based upon judge-made

facts. Nunley states that "[t]he Missouri Supreme Court's refusal to grant Nunley the same relief constitutes an arbitrary deprivation of his state-created liberty interest to the retroactive application of Ring, and involves an unreasonable application of Hicks v. Oklahoma." (Supplemental Reply, Doc. 62, p. 9).

### C. Oral Argument on the Supplemental Petition

During the oral argument on the Supplemental Petition, counsel for Nunley argued that after the original judgment was vacated, under Apprendi Nunley had a right to be sentenced by a jury, even though he had previously pled guilty. When the case was remanded, Nunley specifically asked to be sentenced by a jury. However, the Missouri Supreme Court said that he could not change his mind because: 1) Mo.Rev.Stat. § 565.006.2, tied his guilty plea to having a judge impose the sentence and 2) He had no independent right to have a jury determine the sentence. Nunley argues that tying of these two provisions together makes the statute unconstitutional.

In response, the State argued that the Missouri Supreme Court found that the statute was constitutional and also found that even if it might be unconstitutional as to someone else, it was constitutional as applied to Mr. Nunley, because he waived his right to be sentenced by a jury. The State also argued that the Missouri Supreme Court reasonably interpreted the question of whether the waiver remained valid. The State argued that if the interpretation of the state is objectively reasonable, then it must be left alone even if the particular habeas court disagrees with that interpretation. (Oral Argument Transcript, p. 14). In order to grant the supplemental petition, the State argued that this Court would have to find the Missouri Supreme Court's interpretation to be "both wrong and unreasonable, and we're not looking at wrong and unreasonable

12

here." Id.  The State noted that if the Missouri Supreme Court found that Whitfield applied only to cases that involved a jury deadlock, as opposed to cases that involve a guilty plea and a waiver of jury sentencing, that is a Missouri court interpreting a Missouri case and under Schleeper v. Groose,36 F.3d 735 (8ᵗʰ Cir.1994), a federal court cannot disagree with that interpretation. Id.  The State also asserted that the issues which Nunley raised, but did not brief to the Missouri Supreme Court were procedurally barred and that his supplemental petition was also time barred.

In reply, Nunley argued that when the Missouri Supreme Court vacated his sentence in 1993 and remanded his case, he was put back in the original position he was initially in and he could choose whether he wanted to plead guilty or whether he wanted to have a jury trial. (Oral Argument Transcript, p. 22).  Nunley argued that it does not make sense to look at whether he initially waived his right to a jury trial before his sentence was vacated, because "the court vacated that.  They erased it, and they put him back in the original position of new sentencing hearing and new imposition of sentence." Id.  "So when it was sent back to the court, Mr. Nunley is put in a new situation, like I said, where he gets a whole new shot at whether he wants judge or jury sentencing, and that was a critical distinction." (Oral Argument Transcript, p. 25-26).

### D. Analysis

#### 1. Nunley Plead Guilty and Waived His Right to a Jury Trial

In Missouri, a criminal defendant has both a federal and state constitutional right to have a jury decide his guilt or innocence. . . . A criminal defendant, however, may waive his constitutional right to a jury trial provided such waiver is voluntarily, knowingly and intelligently made. . . .In felony cases, [u]nder the Constitution and Rule 27.01(b), a waiver by the accused and an assent of the court must appear from the record with unmistakable clarity.

13

State v. Freeman, 189 S.W.3d 605, 609 (Mo.App.2006)(internal citations and quotations omitted); State v. Mitchell, 145 S.W.3d 21, 23 (Mo.App.2004)(same).

At his original plea hearing on January 28, 1991, Nunley was specifically asked:

Q. Do you understand that by pleading guilty today you're waiving or giving up a certain number of *constitutional rights* that you would have if you went to trial?

A. Yes.

Q. Do you understand that at trial you would have the right to a trial by a judge or a jury?

A. Yes.
. . .
Q. Do you understand that if you went to trial and you were found guilty of these charges that you would then start the second phase of the trial, which would be the sentencing phase by the jury; do you understand that?

A. Yes.

Q. By waiving that, you're not going to be sentenced by a jury. Do you understand that?

A. Yes.
. . .
Q. It is still your desire to plead guilty today?

A. Yes, it is.

Nunley, 341 S.W.3d 611, 616 (Mo.banc. 2011)(emphasis added).

After the Missouri Supreme Court vacated the death sentence and the case had been remanded, Nunley filed a motion to withdraw his guilty plea. At the January 26, 1994, hearing on this motion, Nunley stated as follows when questioned:

Q. And you knew you had the right to a jury trial?

A. Yes, sir.
. . .

14

Q.  And you were explained how the State would present aggravating circumstances and your attorneys would be presenting mitigating circumstances, correct?

A.  Yes, sir.

Q.  And when you talked about this with your attorneys before you entered your plea, it was brought out the fact that a jury who saw this evidence would be outraged, wasn't it?

A.  Yes, my attorney did mention that.

Q.  And, in fact, you yourself were afraid that if you went before a jury, they very well may sentence you to death, weren't you?

A.  Well, I really made the decision on the advice of my attorneys.

Q.  Well let me ask you this, sir, based upon the discussions you had with your attorneys, your review of all the evidence, and the fact that you were guilty, you understood there was a strong likelihood that if you went before a jury, they were going to sentence you to death, weren't you, sir?

A.  Yes, sir.

Q.  And so then you started discussing your other options.  You said, well, one option would be to go before a judge, right?

A.  Yes.

Q.  But in order to go before a judge, you would have to waive all of your constitutional rights and you would have to plead guilty and that judge would sentence you, correct?

A.  Yes.
. . .

Q.  So as I understand it at the time you entered your guilty plea, you did that because you, in fact, were guilty; you knew the evidence against you was overwhelming.  You were afraid to go in front of a jury because they might sentence you to death, and you thought [the original trial judge] was a good judge to be in front of, is that a fair statement?

A.  Yes.

 . . .

Q.  You gambled on the judge route, you lost, and now you want to try the jury route, isn't that a fair summary?

A. Yes, sir.

Id. at 617. From the above colloquoqy, it is clear that Nunley knowingly, voluntarily and intelligently waived his right to have his case decided by a jury.

### 2. The Waiver Remain Valid After the Missouri Supreme Court Overturned the Sentence and Remanded the Case

When the Missouri Supreme Court overturned Nunley's sentence, the order stated, "Judgment vacated. Cause remanded for new penalty hearing, imposition of sentence, and entry of new judgment." In 1996 the Missouri Supreme Court considered the continued validity of the waiver and stated that the Order did not reverse the guilty plea. "This is demonstrated by this Court specifically remanding for a new penalty hearing and imposition of sentence but not a new plea hearing." State v. Nunley, 923 S.W.2d 911, 919 (Mo.banc. 1996). The fallacy in Nunley's argument is his assumption that once the case was remanded, "Nunley was in a similar position to someone who initially pled guilty, and thereafter had his guilty plea set aside." (Nunley Supplemental Reply, Doc. 62, p. 2). Nunley argues that he gets to go back to the beginning and thus had a right to have a jury determine his sentence. This is incorrect. The guilty plea remained valid, the Missouri Supreme Court only directed that a new penalty hearing be held, it did not vacate the guilty plea. In Boykin v. Alabama, 395 U.S. 238, 242, 88 S.Ct. 1709, 1711-12, 23 L.Ed.2d 274 (1969), the Court stated, "[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." The Missouri Supreme Court directed that the proceedings should begin again, but only at the *penalty* stage, not at the *plea* stage. Nunley argues even at the penalty stage, he

16

was entitled to have a jury determine the necessary facts to impose the death penalty due to the retroactive application of Ring. But, Nunley is not entitled to have a jury at the penalty stage because the Missouri statute ties a guilty plea to a waiver of jury sentencing and Nunley specifically chose to plead guilty. Mo.Rev.Stat. §565.006.2 states, "No defendant who pleads guilty to a homicide offense . . .shall be permitted a trial by jury on the issue of the punishment to be imposed, except by agreement of the state." "A guilty plea includes a waiver of jury trial." Cole v. State, 218 S.W.3d 551, 554 (Mo.App.2007); State v. Shafer, 969 S.W.2d 719, 731 (Mo. banc) cert. denied, 525 U.S. 969, 119 S.Ct. 419, 142 L.Ed.2d 340 (1998). It should also be noted that at his original plea hearing on January 28, 1991, Nunley was specifically asked:

> Q. Do you understand that by pleading guilty today you're waiving or giving up a certain number of *constitutional rights* that you would have if you went to trial?
>
> A. Yes.
>
> Q. Do you understand that at trial you would have the right to a trial by a judge or a jury?
>
> A. Yes.
>
> . . .
>
> Q. Do you understand that if you went to trial and you were found guilty of these charges that you would then start the second phase of the trial, which would be the sentencing phase by the jury; do you understand that?
>
> A. Yes.
>
> Q. By waiving that, you're not going to be sentenced by a jury. Do you understand that?
>
> A. Yes.
>
> . . .

Case 4:99-cv-08001-DGK   Document 81   Filed 04/18/13   Page 17 of 26

Q.  It is still your desire to plead guilty today?

A.  Yes, it is.

Nunley, 341 S.W.3d 611, 616 (Mo.banc. 2011)(emphasis added). Thus, Nunley was advised that he had a constitutional right to have a jury determine his sentence, but he chose to waive that right by pleading guilty.  As the Court noted in Smith v. State, 837 S.W.2d 25, 28 (Mo.App.1992), "[t]he decision to waive a jury trial in this case was a matter of trial strategy and consequently does not provide a basis for post-conviction relief."

### 3.  Did Nunley Waive the Blakely argument by not raising it in his brief to the Missouri Supreme Court ?

The Missouri Supreme Court noted that Nunley never once mentioned Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), in the points relied on section or in the argument portion of his primary or reply briefs.  The Missouri Supreme Court noted that Nunley had waived these issues because pursuant to Rule 84.04(d), the points relied upon must "state concisely the legal reasons for the appellant's claim of reversible error."  Nunley, 341 S.W.3d at 625.  The Court also noted that if a claim is not supported in the argument section, it is deemed abandoned.  Id.  In opposition, Nunley argues that even though he did not specifically mention Blakely in his brief, his brief did argue that Ring and Apprendi as applied through Whitfield, gave him the retroactive right to have a jury determine the facts necessary to impose a sentence of death at his new penalty hearing.  Nunley also argues that he has "fairly presented" his federal claims to the state court.  Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).  The Court finds that it need not make a determination on

18

this issue, because even if Nunley were considered to have fairly presented this issue to the Missouri Supreme Court, this Court finds that the <u>Apprendi</u>, <u>Ring</u> and <u>Blakely</u> decisions are not applicable in this case.

**4. Was the Missouri Supreme Court's Decision an Unreasonable Application of <u>Hicks v. Oklahoma</u> or <u>Ring</u> ?**

In <u>Hicks v. Oklahoma</u>, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), the petitioner went to trial in an Oklahoma court on a charge of unlawfully distributing heroin.  As petitioner had twice been convicted of felony offenses within the preceding ten years, the jury was instructed that if they found him guilty, under the habitual offender statute, they had to sentence him to forty years imprisonment.  Petitioner was convicted and sentenced by the jury to forty years.  After his conviction, the habitual offender statute was declared unconstitutional.  In Oklahoma, convicted defendants are entitled to have their punishments decided by a jury.  The Supreme Court stated that "[t]he defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion . . . and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State."  <u>Id</u>. at 346 (internal citations omitted).

In <u>Ring</u>, the petitioner was charged with murder, armed robbery and related charges.  The trial judge instructed the jury on the alternative charges or premeditated murder and felony murder.  The jury deadlocked on premeditated murder, but convicted Ring of felony murder occurring in the course of armed robbery.  Under Arizona law, Ring could not be sentenced to death unless further findings were made.  The statute

19

stated that first-degree murder was punishable by death or life imprisonment. Under the statute, the judge who presided at the trial was to "conduct a separate sentencing hearing to determine the existence or nonexistence of [certain enumerated] circumstances . . . for the purpose of determining the sentence to be imposed. [Ariz.Rev.Stat.] § 13-703(C)." Id. at 592. The statute also stated, "[t]he hearing shall be conducted before the court alone. The court alone shall make all factual determinations required by this section or the constitution of the United States or this state." Id. After hearing testimony from one of the co-conspirators, the judge determined that Ring was the individual who had actually shot the security guard and that he was a major participant in the armed robbery that led to the killing. The judge also determined that there were two aggravating factors and one nonstatutory mitigating factor. Weighing these factors, the judge sentenced Ring to death. On appeal, Ring argued that Arizona's sentencing statute was unconstitutional because it permitted a judge to make a finding of fact which raised the defendant's maximum penalty. The Supreme Court stated that the question presented was "whether [an] aggravating factor may be found by the judge, as Arizona law specifies, or whether the Sixth Amendment's jury trial guarantee, made applicable to the States by the Fourteenth Amendment, requires that the aggravating factor determination be entrusted to the jury." Id. at 597. The Supreme Court stated that "[b]ecause Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' Apprendi, 530 U.S. at 494, n.19, 120 S.Ct. 2348, the Sixth Amendment requires that they be found by a jury." Ring, 536 U.S. 584, 609.

Nunley argues that the Missouri Supreme Court's decision denying him his state

created liberty interest under <u>State v. Whitfield</u>[1], 107 S.W.3d 253 (Mo.banc 2003), to the retroactive application of <u>Ring</u>, is an unreasonable application of <u>Hicks</u>. This Court however disagrees. As noted above, in reviewing the Missouri Supreme Court's decision, this Court must separately consider the "contrary to" and "unreasonable application" prongs of 28 U.S.C. § 2254(d)(1).

**a. Is the Missouri Supreme Court's Opinion "Contrary To" <u>Ring</u> or <u>Hicks</u>?**

The Court does not find that the Missouri Supreme Court's decision is contrary to either <u>Ring</u> or <u>Hicks</u>. In <u>Moeller v. Weber</u>, 649 F.3d 839,843 (8th Cir.2011), the Court stated, "a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts." The Missouri Supreme Court's opinion did not apply any legal rule that contradicted earlier United States Supreme Court opinion. The Missouri Supreme Court held that "<u>Ring</u> does not apply to defendants who plead guilty and waive their right to jury sentencing, as Nunley did here." 341 S.W.3d at 620. The Missouri Supreme Court cited cases from several other jurisdictions in support of this proposition. The Missouri Supreme Court found that "[t]his case is factually inapposite to <u>Ring</u> and <u>Whitfield</u>." <u>Id</u>. at 621. This Court agrees with the Missouri Supreme Court, in both <u>Hicks</u> and <u>Ring</u>, the defendants were tried before a jury. In this case, however, Nunley waived his right to a jury and specifically stated during the hearing on his motion to withdraw his plea, that he did not want a jury to sentence him because he believed there was a strong possibility that

---

[1] In <u>State v. Whitfield</u>, the Missouri Supreme Court found that <u>Ring</u> was retroactive.

Case 4:99-cv-08001-DGK   Document 81   Filed 04/18/13   Page 21 of 26

they would sentence him to death. Several courts have held that in this context <u>Ring</u> is not applicable.

In <u>State v. Piper</u>, 709 N.W.2d 783 (S.D. 2006), the Court stated:

the <u>Ring</u> analysis is inapplicable when a defendant waives the right to jury sentencing. . . .all courts that have considered the issue uphold such waivers. The courts recognize that the <u>Ring</u> analysis is inapplicable because the defendant in <u>Ring</u> pleaded not guilty and went to trial, but was deprived of jury sentencing. Because <u>Ring</u> is limited to cases where a defendant is deprived of a *requested* jury sentencing, the authorities hold that guilty pleas and waivers are valid even if the underlying sentencing scheme explicitly and unequivocally precludes the defendant from receiving a jury sentence.

<u>Id</u>. at 806-07. In <u>Colwell v. State</u>, 118 Nev. 807, 823, 59 P.3d 463, 474 (2002), <u>cert.</u> <u>denied</u>, 540 U.S.981, 124 S.Ct. 462, 157 L.E.2d 370 (2003), the Court also found that <u>Ring</u> was not applicable, stating, "<u>Ring</u> concerned a defendant who pleaded not guilty and went to trial; it does not address waiver of the right to a jury trial. We do not read <u>Ring</u> as altering the legitimacy or effect of a defendant's guilty plea. The Supreme Court has held that the valid entry of a guilty plea in a state criminal court involves the waiver of several federal constitutional rights. Among these 'is the right to trial by jury.'" Similarly, in <u>Moore v. State</u>, 771 N.E.2d 46, 49 (Ind.2002), <u>cert.</u> <u>denied</u>, 538 U.S. 1014, 123 S.Ct.1931, 155 L.Ed.2d 851 (2003), the Indiana Supreme Court stated, "[e]ven if we were to assume that the defendant might otherwise be constitutionally entitled to a jury determination of the death eligibility factors, his plea of guilty forfeited any such claimed entitlement." <u>See</u> <u>also</u> <u>See</u> <u>State v. Downs</u>, 604 S.E.2d 377, 380, 361 S.C. 141, 146 (2004)("Ring did not involve jury-trial waivers and is not implicated when a defendant pleads guilty."); <u>Leone v. State</u>, 797 N.E.2d 743, 750 (Ind. 2003)("With a plea of guilty, Leone forfeits claimed entitlement to certain rights including the right to a jury trial.").

22

Thus, this Court finds that the Missouri Supreme Court's opinion was not "contrary to"

the U.S. Supreme Court's decisions in either <u>Hicks</u> or <u>Ring</u>.

### b. Is the Missouri Supreme Court's Opinion an "Unreasonable Application" of <u>Ring</u> or <u>Hicks</u>?

In <u>Johnson v. Steele</u>, No. 11-8001-CV-W-DGK, 2013 WL 625318, (W.D.Mo. Feb.

20, 2013), the Court stated,

> [t]he unreasonable application of provision applies if the state court
> identifies the correct governing legal rule from [United States Supreme
> Court] cases but unreasonably applies it to the facts of the particular state
> prisoner's case. . . . it is important to note that an *unreasonable* application
> of federal law is different from an *incorrect* application of federal law. . . .A
> federal habeas court may not issue a writ simply because the court
> concludes that the state court decision applied clearly established federal
> law erroneously or because the federal habeas court would reach a
> different conclusion from the state court. . . .Rather, the state court's
> application must also be objectively unreasonable.

<u>Id</u>. at *3 (internal citations and quotations omitted). In <u>Colvin v. Taylor</u>, 324 F.3d 583,

588 (8th Cir.), <u>cert</u>. <u>denied</u>, 540 U.S. 851, 124 S.Ct. 137, 157 L.Ed.2d 93 (2003), the

Court stated, "[w]e have held, however, that in the habeas corpus context, the objective

reasonableness of a state court's application of Supreme Court precedent may be

established if our sister circuits have similarly applied the precedent." The Fourth

Circuit in <u>Lewis v. Wheeler</u>, 609 F.3d 291, <u>cert</u>. <u>denied</u>, 131 S.Ct. 59 (2010), considered

whether <u>Apprendi</u> or <u>Ring</u> applied in the context of a guilty plea. Similar to the Missouri

statute, the Virginia statute at issue in that case stated that when a defendant was

charged with a death-eligible offense, the trial court should bifurcate the process. The

jury first determined guilt or innocence. If the defendant was found guilty, then a

separate proceeding before the same jury was held to determine the penalty. When a

defendant pleads guilty and waives his right to a jury determination of guilt, then under

23

Virginia law, the judge conducts the sentencing proceeding and determines whether an aggravating factor or factors exist and decides if the death penalty should be imposed. In Lewis, the defendant argued that she had a constitutional right under Apprendi/Ring to plead guilty and have a jury determine the existence of aggravating factors necessary to impose the death penalty and that the Virginia statute deprived her of this right. In considering Lewis' claims, the Court stated:

> First, neither Apprendi nor Ring holds that a defendant who pleads guilty to capital murder and waives a jury trial under the state's capital sentencing scheme retains a constitutional right to have a jury determine aggravating factors. . . . In both cases, the challenged sentencing procedures denied defendants the option of having a jury determine a sentence enhancement, or aggravating factor, *regardless* of whether the defendant pleaded guilty or not guilty to the charged offense. In Apprendi, the defendant pleaded guilty but expressly preserved his right to challenge any hate-crime enhancement. And in Ring, the defendant was convicted of capital murder by a jury. Thus, in neither case did the defendant waive his right to a jury determination of facts upon which the enhancement or aggravating factor rested. In short, the Ring decision did not clearly establish or even necessarily forecast that a capital defendant who pleads guilty and waives his right to a jury trial can insist upon a jury trial on aggravating factors.

Id. at 309-10. Thus, in light of this decision and the decisions of the other courts which have found that Ring does not apply when a defendant pleads guilty and waives a jury trial, the Court cannot say that the Missouri Supreme Court's decision was an "unreasonable application" of either Hicks or Ring.

### 5. Was the Missouri Supreme Court's Decision an Unreasonable Determination of the Facts?

Habeas relief can also be granted if the lower state decision was based on an unreasonable determination of the facts . . . under 28 U.S.C. § 2254(d)(2). A determination of fact is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. . . .To be entitled to relief based on an unreasonable determination of the facts, a habeas petitioner must show that the

determination of the facts was unreasonable by clear and convincing
evidence.

Johnson v. Steele, 2013 WL 625318 at *4 (internal citations and quotations omitted).

"Further, pursuant to § 2254(e)(1), [a] state court's determination on the merits of a

factual issue is entitled to a presumption of correctness."  Sherman v. Bowersox, No.

4:10CV1912SNLJ/MLM, 2012 WL 4049001 at *5 (E.D.Mo.June 5, 2012)(citing Boyd v.

Minnesota, 274 F.3d 497, 500 (8th Cir.2001)).

      Nunley argues that a determination of whether or not he waived his retroactive

right to have a jury determine the facts necessary to impose the death penalty must be

decided by looking at the proceedings that occurred before Judge O'Malley.  Nunley

states that it is clear that he specifically requested Judge O'Malley to convene a jury to

determine his punishment and that this request was denied.  Nunley states that the

"suggestion or conclusion that Nunley waived his retroactive right to have a jury

determine the sentencing facts before Judge O'Malley is clearly based on an

unreasonable determination of facts in light of the state court record."  (Petitioner's

Supplemental Reply, Doc. 62, p. 6).   However, this is not a factual determination, but

rather is a legal determination. The Missouri Supreme Court made a legal determination

that Nunley's original guilty plea/jury waiver remained valid after the case was

remanded for re-sentencing.  As discussed above, the Court finds that this is a

reasonable application of the law.  The Court thus finds that the Missouri Supreme

Court's decision was not an unreasonable application of the facts which occurred in the

state court.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **DENIES** petitioner's

Supplemental Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254

(Doc. # 49).


Date:  April 18, 2013                                **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                          Fernando J. Gaitan, Jr.
                                                             Chief United States District Judge